IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | NO.  08-625-01 |
| **ANDRE WARE** | : | |
| | : | |

**DuBOIS, J.**                                                                                               **January 6, 2012**

# M E M O R A N D U M

**I.      Introduction**

On October 14, 2008, defendant Andre Ware was charged in a five-count Indictment with various narcotics and weapons offenses, including three counts related to possession with intent to distribute cocaine base ("crack") (referred to as "crack cocaine").[1]  Following a jury trial, defendant was convicted of the three narcotics counts, which involved 1.17 grams of crack cocaine.

Presently before the Court are defendant's Pro Se Motion for Modification of Sentence Pursuant to Title 18 U.S.C. Sections 3582(c)(2) & 3582(1)(B) and defendant's counseled Supplemental Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2).  Defendant seeks resentencing based on amendments to the United States Sentencing Guidelines ("USSG") regarding crack cocaine offenses that were promulgated and given retroactive effect after his original sentencing.  For the reasons set forth below, the Court concludes that defendant is entitled to a sentence reduction and grants defendant's motions.

---

[1] "'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form."  USSG § 2D1.1(D).

## II. Background

### A. Charges

Defendant was charged by Indictment on October 14, 2008, with the following offenses:[2] Count One, Conspiracy to Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (2006) (amended Oct. 15, 2008)[3], 846; Count Two, Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C); Count Three, Possession with Intent to Distribute Cocaine Base Within 1,000 Feet of a School, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 860(a); Count Four, Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A); and Count Five, Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1).

The Court held hearings on a motion to dismiss the Indictment on April 28, 2009, and a motion to suppress evidence on May 20, 2009. The Court denied both motions and held a three-day trial that began on August 3, 2009. By agreement of the parties, Counts One through Four were submitted to the jury for consideration, while Count Five was tried to the Court sitting without a jury. On August 5, 2009, the jury returned verdicts of guilty on Counts One, Two, and Three, and a verdict of not guilty on Count Four. The Court entered a verdict of not guilty on Count Five.

### B. Guideline Calculation

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR") that contained the sentencing guideline calculation for defendant

---

[2] The Indictment also named another individual as a co-defendant; the co-defendant is not involved in the motions presently before the Court.

[3] The Court omits the year from subsequent references to 21 U.S.C. § 841. The version of that statute applicable to defendant's conduct was enacted July 27, 2006, and remained effective until April 14, 2009. Congress has not amended the other relevant statutes.

pursuant to the United States Sentencing Guidelines ("USSG" or "Guidelines"). All offenses of conviction were grouped together pursuant to USSG § 3D1.2(d).[4] Because defendant was convicted of drug trafficking in a protected area, defendant's base offense level was eighteen: two plus the offense level applicable to the quantity of controlled substances involving the protected location. USSG § 2D1.2(a). In defendant's case, the crack cocaine quantity was 1.17 grams, equivalent to an offense level of sixteen, USSG § 2D1.1(c)(12) (2009 ed.), for a total base offense level of eighteen. The PSR recommended a two-level increase for possession of a dangerous weapon under USSG § 2D1.1(b)(1), but, at sentencing, the Court declined to impose the two-level increase because defendant was found not guilty of the gun offenses. (11/17/09 Tr. 10, 25.)

Based on defendant's criminal record, defendant's criminal history category was VI. With an offense level of eighteen and a criminal history category of VI, defendant's guideline range would have been fifty-seven to seventy-one months' incarceration. USSG Ch. 5 pt. A.

At sentencing, the Court next turned to the Chapter Four enhancements. Defendant's criminal record made him a Career Offender under USSG § 4B1.1(a).[5] Because the maximum statutory penalty to which defendant was subject was forty years, under the Career Offender

---

[4] As discussed infra, the Nov. 1, 2009, edition of the USSG ("the 2009 edition") was in effect at defendant's sentencing, and the November 1, 2011, edition ("the 2011 edition") is currently in effect. This Memorandum specifies the USSG edition in citations only when the cited provision in the 2011 edition is different in relevant part from the 2009 edition.

[5] Defendant's criminal record included, inter alia, convictions for manufacturing with the intent to deliver a controlled substance (Court of Common Pleas of Philadelphia County, 1995), robbery (Court of Common Pleas of Philadelphia County, 1992), burglary (Court of Common Pleas of Philadelphia County, 1995) and aggravated assault (Court of Common Pleas of Philadelphia County, 2006). A defendant is a "Career Offender" when (1) he is at least eighteen years old at the time of the commission of the instant offense of conviction, (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense, and (3) he has at least two prior felony convictions for either a crime of violence or a controlled substance offense. USSG § 4B1.1(a).

guidelines, defendant's offense level was increased to thirty-four. USSG § 4B1.1(b)(B). The guideline sentence for an offense level of thirty-four with a criminal history category of VI was 262 to 327 months' incarceration. USSG Ch. 5 pt. A.

### C. Sentencing

At sentencing on November 17, 2009, the Court adopted the guideline calculations from the PSR as outlined above but rejected the two-level enhancement for use of a weapon. (11/17/09 Tr. 9-11.) The Court also made several corrections to defendant's biographical information, which were incorporated in the revised PSR. (Id.)

Defendant did not challenge his classification as a Career Offender. (Id. at 12, 20.) However, defendant's counsel argued the Court should not impose a Career Offender sentence because approximately ten years passed between three of defendant's prior convictions and the instant offense, and during the last five of those years, defendant had regular employment as a hospital orderly. (Id. at 28-31.) The government argued that Career Offender treatment was appropriate notwithstanding the "gap between some of the Defendant's most criminally productive years." (Id. at 41.)

Before imposing sentence, the Court observed that the case was "difficult" because it presented, on the one hand, a criminal history "about as high as any defendant . . . who ha[d] stood before [the Court]," and, on the other hand, a "drug quantity [that was] not very significant." (Id. at 44.) The Court then stated:

> THE COURT: . . . Under the Career Offender guidelines, you are subject to being sentenced to a term of 262 months . . . to [327] months . . . .
>
> In deciding on an appropriate sentence, I must consider the goals of sentence as directed by Congress . . . .

> . . . I think application of the Career Offender Guidelines, as set forth in the Guidelines, that is imposing a sentence in the range of 262 to 327 months, is too much, the punishment is too harsh for the crime. It's not necessary to impose a sentence within that Guideline range in order to achieve all of the goals of sentencing.
>
> <u>Had you not been designated a Career Offender, the Guidelines would have been 57 to 71 months. The midpoint of that Guideline range is 64 months, that's the sentence you probably would have faced had you [not been designated a Career Offender],[6] but because you are a Career Offender I'm going to have to enhance that Guideline, I'm going to have to increase it. I'm going to double it, I'm sentencing you to 128 months['] incarceration</u>, well under the low end of the Career Offender guideline, but certainly a sentence that I think will send the word out, you can't deal drugs within 1,000 feet of a school with a criminal record such as yours and expect a Guideline sentence or less. I think a sentence of 128 months accomplishes all of the goals of sentencing, it's appropriate punishment, it should deter others . . . . It's less than the Government asked for, it's less than half of what the Government asked for, but I think it's an appropriate sentence and I think it appropriately recognizes . . . your very extensive criminal history. Without that criminal history, your sentence would have been half of what I impose.

(<u>Id.</u> at 47-48 (emphasis added).)[7] The Court imposed a sentence of 128 months' incarceration on Counts One and Three, to run concurrently. (<u>See</u> Judgment, Doc. No. 118, at 2.)[8]

---

[6] The transcript reads "had you had no criminal history," but it is apparent from a reading of the entire transcript that the Court meant "had you not been designated a Career Offender"—i.e., if the Court were imposing a sentence based on an offense level of eighteen and a criminal history category of VI, without the increase in the offense level to thirty-four under the Career Offender Guidelines—as the Court stated several other times.

[7] The Court imposed a sentence <u>outside</u> of the USSG advisory guideline system. <u>See</u> <u>United States v. Booker</u>, 543 U.S. 220 (2005). The Court did not depart downward under USSG § 4A1.3(b), which permits a departure based on the overrepresentation of the seriousness of defendant's criminal history or the likelihood of recidivism. When a defendant qualifies as a Career Offender, USSG § 4A1.3(b) authorizes a maximum departure of one criminal history category. USSG § 4A1.3(b)(3)(A).

[8] Count Two was dismissed as a lesser-included offense of Count Three. The Court also imposed a term of supervised release, a fine, and a special assessment. Those provisions of the sentence are not at issue.

### D. Fair Sentencing Act of 2010 and USSG Amendments

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("the FSA"), Pub. L. No. 111-220, 124 Stat. 2372, which, inter alia, modified the penalties for crack cocaine offenses. The FSA authorized the United States Sentencing Commission ("USSC") to amend the USSG to give effect to the FSA on an emergency basis. Id. § 8. Pursuant to this power, the USSC issued Amendment 748. That provision became effective on November 1, 2010, and amended the Drug Quantity Table in USSG § 2D1.1(c) to reflect the revised penalties for crack cocaine offenses. USSG App. C, Amend. 748 (Reason for Amendment). Amendment 748 was not made retroactive at that time. See USSG § 1B1.10 (2010 ed.).

Amendment 750 to the USSG, which became effective on November 1, 2011, made the changes in Amendment 748—including the crack cocaine offense guideline revisions—permanent. USSG App. C, Amend. 750. The USSC also issued Amendment 759, which became effective November 1, 2011, and potentially affects this case in two ways. First, Amendment 759 made the changes to the crack cocaine sentencing guideline revisions in Amendment 750 retroactive. See USSG App. C, Amend. 759 (Reason for Amendment). Second, Amendment 759 modifies USSG § 1B1.10, which governs when a term of imprisonment may be reduced by reason of retroactive amended guideline ranges.

### E. Defendant's Pro Se Motion for Modification of Sentence & Supplemental Motion to Reduce Sentence

Defendant filed a Pro Se Motion for Modification of Sentence on July 27, 2011, asking the Court to reduce his sentence pursuant to the FSA and the USSG amendments. The Court deferred ruling until the USSG amendments became effective. The Federal Defender Association filed a Supplemental Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2)

("Def. Supp. Mot.") on defendant's behalf on December 9, 2011, after the amendments went into effect.

## III.     Legal Standard

18 U.S.C. § 3582(c)(2) provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the [USSC].

This statute creates a two-step inquiry. Dillon v. United States, __ U.S. __, 130 S. Ct. 2683, 2691 (2010). "A court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." Id.

In step one, the Court "follow[s] the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." Id. The newly revised version of USSG § 1B1.10, effective November 1, 2011, provides, in relevant part:

> (a) Authority.—
>
> > (1) In General.—In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). . . .
>
> > (2) Exclusions.—A reduction in the defendant's term of imprisonment is not consistent with this policy statement

and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—

(A) none of the amendments listed in subsection (c) is applicable to the defendant; or

(B) an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range. . . .

(b) Determination of Reduction in Term of Imprisonment.—

(1) In General.—In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

(2) Limitation and Prohibition on Extent of Reduction.—
(A) Limitation.—Except as provided in subdivision (B), the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection.

(B) Exception for Substantial Assistance.—If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate.

(C) Prohibition.—In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.

> (c) Covered Amendments.—Amendments covered by this policy statement are listed in Appendix C as follows: . . . 750 (parts A and C only).

The Court must first determine whether "the amended guideline range that would have been applicable" to defendant has been lowered. USSG § 1B1.10(b)(1) (2011 ed.). It must do so by substituting only the revised offense guidelines of Amendment 750 and leaving the rest of the calculation as it was. Id. If the revised offense guideline range is lower, resentencing is consistent with USSG § 1B1.10, and the Court may proceed to step two of the Dillon analysis. However, if the revised offense guidelines do not have the "effect of lowering the defendant's applicable guideline range," a sentencing reduction is not consistent with USSG § 1B1.10, and the Court's inquiry is complete. See USSG § 1B1.10(a)(2)(B) (2011 ed.).

**IV.   Discussion**

This case presents a single, narrow issue: is a defendant eligible for a sentence reduction under the retroactive crack cocaine amendments when the Court originally imposed a non-guideline sentence but explicitly stated that the sentence was double the period of incarceration to which defendant would have been subject under the sentencing guidelines if he had not qualified as a Career Offender? Looking only at the quantity of crack cocaine for which defendant was responsible and without considering the Career Offender rules, the retroactive crack cocaine amendments would reduce defendant's offense level to fourteen from eighteen, yielding a guideline sentence of thirty-seven to forty-six months of incarceration instead of fifty-seven to seventy-one months. See USSG §§ 2D1.1(c)(14), 2D1.2(a) (2011 ed.). Because the amendments "reduce the final sentence imposed by the Court[,] which was double the otherwise applicable guideline sentence," defendant asks the Court to impose a new sentence of double the midpoint of the lowered range, or eighty-four months. (Def. Supp. Mot. 2.) The government

opposes defendant's motion and argues that the retroactive amendments do not apply in this case.

### A. Parties' Arguments as to Proper Interpretation of 18 U.S.C. § 3582(c)(2) and USSG § 1B1.10 Commentary

The parties disagree about whether USSG § 1B1.10 (2011 ed.), which expresses USSC policy as to when the Court may reduce a sentence based on a retroactive amendment, permits the Court to do so in this case.[9] The government acknowledges that "the defendant's base offense level for the crack offense . . . would be reduced to 12" under the retroactive amendments. (Government's Resp. Def.'s Mot. Reduction Sentence Pursuant to 18 U.S.C. § 3582(c)(2) ("Gov't Resp.") at 5.) However, the government argues that USSG § 1B1.10 (2011 ed.) prohibits the Court from reducing defendant's sentence because the Court's decision to impose a sentence outside the USSG system makes defendant ineligible for a sentencing reduction. (Gov't Resp. at 5-12.)[10] The government's interpretation of USSG § 1B1.10 (2011 ed.) hinges on the definition of "applicable guideline range" in that provision's Application Notes Commentary. That definition, new in the 2011 edition of the USSG,[11] provides:

---

[9] Unlike at the original sentencing, where the USSG are advisory pursuant to Booker and the Court retains the authority to impose a sentence outside of the Guidelines, Booker does not apply to a motion for resentencing under USSG § 1B1.10, and thus the Court may only reduce defendant's sentence if § 1B1.10 authorizes it to do so. Dillon, 130 S. Ct. 2693; see also 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed," unless a specifically enumerated exception applies.).

[10] The government also argues that a reduction is not appropriate because the Career Offender rules nullify the effect of the crack cocaine amendments on defendant's case. (E.g., Gov't Resp. 6 (contending that the "'applicable guideline range' was set by the career offender provision").) Because the Court concludes that the resolution of the case depends on the question of whether the Court's non-guideline sentence was "based on" a now-lowered guideline range, the Court does not address the government's argument about the effect of the Career Offender rules.

[11] Under the prior edition of USSG § 1B1.10, when the Court imposed a non-guideline sentence, a sentence reduction "generally" would not be authorized, though it follows that a reduction might be appropriate in exceptional cases if that provision were still in effect. See USSG

-10-

> Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in [1B1.10(c)] that lowers the applicable guideline range (<u>i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the [USSG] or any variance</u>).

USSG § 1B1.10, comment. (n.1(A)) (emphasis added).  Applying that definition, "'the applicable guideline range' was set by the career offender provision, prior to the variance under the [18 U.S.C. §] 3553(a) factors," and defendant is not entitled to a reduction in sentence. (Gov't Resp. 6.)

Defendant concedes that the Application Notes Commentary to USSG § 1B1.10 (2011 ed.) defines "applicable guideline range" in a way that would preclude the Court from reducing his sentence.  (Def. Supp. Mem. 1-2.)  However, according to defendant, the USSG definition of "applicable guideline range" is "inconsistent with the statutory language of [18 U.S.C.] § 3582(c)(2), which permits a reduction in sentence whenever a defendant 'has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the [USSC],'" and, because the statute trumps the commentary, defendant is eligible for a sentencing reduction.  (Def. Supp. Mem. 2 (quoting <u>Freeman v. United States</u>, 131 S. Ct. 2685, 2692-93 (2011) (plurality op.)); <u>see also</u> Def. Reply 5 (urging the Court to take a "a broad view of eligibility[,] in accord with the plain meaning of the phrase 'based on'").)

The government disagrees with defendant's reading of <u>Freeman</u>.  According to the government, "the plurality's sweeping proposition . . . that a defendant is eligible for a sentence reduction whenever the sentencing range in question was used by the court in evaluating the case, was rejected by five justices and is not controlling precedent." (Gov't Resp. 13.)  The

---

§ 1B1.10(b)(2)(B) (2009 ed.) ("[I]f the original term of imprisonment constituted a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and [<u>Booker</u>], a further reduction <u>generally</u> would not be appropriate.") (emphasis added).

government also contends that Freeman is inapposite because it concerned whether a sentence reduction was available to a defendant who pled guilty pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C). (Id.)

### B. 18 U.S.C. § 3582(c)(2), as Interpreted by the Supreme Court in Freeman, Authorizes a Reduction in Defendant's Sentence

The Court concludes that 18 U.S.C. § 3582(c)(2), as interpreted by the Supreme Court in Freeman, authorizes the Court to reduce defendant's sentence even though the Application Note Commentary to USSG § 1B1.10 (2011 ed.) would bar relief. [12] The Court's conclusion is supported both by precedent authorizing sentence reductions in similar circumstances under earlier versions of the USSG and by the policy goals of Congress and the USSC in promulgating the retroactive crack cocaine amendments.

#### 1. 18 U.S.C. § 3582(c)(2) Authorizes a Sentencing Reduction When the Amended Guideline Range Was the "Basis or Foundation for the Term of Imprisonment"

In Freeman, the Supreme Court reversed the Sixth Circuit's ruling in United States v. Goins, 355 F. App'x 1 (2009), in which the Sixth Circuit had held that a defendant who enters a guilty plea under Federal Rule of Criminal Procedure 11(c)(1)(C) ("a C plea")[13] could not benefit from a retroactive USSG amendment. Four Justices joined the Supreme Court's plurality opinion, written by Justice Kennedy; Justice Sotomayor wrote a concurring opinion; and four Justices filed a dissent. All three opinions analyzed 18 U.S.C. § 3582(c)(2) extensively.

---

[12] Because the Supreme Court's ruling in Freeman focused primarily on the interpretation of the text of 18 U.S.C. § 3582(c)(2), the Court finds unpersuasive the government's attempt to distinguish Freeman from this case on the ground that Freeman involved a C plea.

[13] In a C plea agreement, the parties may stipulate that the government will "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." Fed. R. Crim. P. 11(c)(1)(C). If the court accepts such a plea, the recommendation binds the court. Id.

According to the plurality, a defendant who entered a C plea is eligible for relief under 18 U.S.C. § 3582(c)(2) because "the judge's decision to accept the plea and impose the recommended sentence is likely to be based on the Guidelines." Freeman, 131 S. Ct. at 2695. In reaching that conclusion, the plurality observed:

> [USSG § 1B1.10] seeks to isolate whatever marginal effect the since-rejected Guideline had on the defendant's sentence. Working backwards from this purpose, § 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to <u>whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence</u> or to approve the agreement.

Id. at 2692-93 (emphasis added). Defendant contends that these statements compel a finding in his favor. (Def. Supp. Mem. 2.)

Justice Sotomayor agreed with the plurality that the defendant in Freeman was entitled to a reduction in sentence. However, instead of looking to the district court's use of the USSG in deciding whether to approve the agreement, she took the position that a defendant who enters a C plea is eligible for a sentencing reduction only if the C plea agreement "expressly use[d] a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment." Id. at 2695 (Sotomayor, J., concurring).

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" Marks v. United States, 430 U.S. 188, 193 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976)). Because "the Marks framework applies where one opinion is clearly 'narrower' than another, that is, where one opinion would always lead to the same result that a broader opinion would reach," Jackson v. Danberg, 594 F.3d 210, 223 (3d Cir. 2010), the Court agrees with the

Fourth Circuit and other courts that Justice Sotomayor's concurrence is the controlling opinion in Freeman. The plurality's opinion is broader than Justice Sotomayor's, and "[e]very Justice who joined in the plurality opinion would agree with Justice Sotomayor" that a sentence reduction is available when a C plea agreement expressly uses a sentencing guideline range. See United States v. Brown, 653 F.3d 337, 340, 340 n.1 (4th Cir. 2011) ("Under the fragmented opinion, Justice Sotomayor's rationale becomes the Court's holding."); see also United States v. Curry, No. 08-41-7, 2011 WL 6378821, at *2 (E.D. Pa. Dec. 20, 2011) (adopting opinion of Sotomayor, J., as controlling opinion); cf. United States v. Rivera, 662 F.3d 166, 174-75 (2d Cir. 2011) (relying on opinion of Sotomayor, J., in interpreting Freeman).

Justice Sotomayor's concurring opinion defined "based on" in 18 U.S.C. § 3582(c)(2) as permitting a district court to reduce a defendant's sentence whenever the guideline range in question was "the basis or foundation" for the term of imprisonment that the court actually imposed. Freeman, 131 S. Ct. at 2695 (Sotomayor, J., concurring). Justice Sotomayor declined to endorse the plurality's statement that "§ 3582(c)(2) should be understood 'to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement.'" Id. at 2696-97 (Sotomayor, J., concurring) (quoting plurality op.) (emphasis added). However, Justice Sotomayor wrote that, in applying 18 U.S.C. § 3582(c)(2),

> To ask whether a particular term of imprisonment is 'based on' a Guidelines sentencing range is to ask whether that range serves as the basis or foundation for the term of imprisonment . . . As a result, in applying § 3582(c)(2) a court must discern the foundation for the term of imprisonment imposed by the sentencing judge.

Id. at 2695 (Sotomayor, J., concurring).  That Justice Sotomayor interpreted "based on," as used in 18 U.S.C. § 3582(c)(2), to refer to the sentencing range that was the "basis" for the sentence that the Court actually imposed is confirmed throughout her opinion:

> [When a plea agreement provides] for a specific term of imprisonment . . . [and] make[s] clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty[,] [a]s long as that sentencing range is evident from the agreement itself, for purposes of § 3582(c)(2) the term of imprisonment imposed by the court in accordance with that agreement is 'based on' that range.

Id. at 2697-98 (Sotomayor, J., concurring) (emphasis added).

USSG § 1B1.10 and its Application Notes Commentary must, therefore, permit the Court to reduce a defendant's sentence when the guidelines range that was the basis for the sentence the Court actually imposed has been amended.  When commentary in the USSG violates a federal statute, the USSG commentary is invalid and "must give way."  United States v. Labonte, 520 U.S. 751, 757 (1997); see also United States v. Stinson, 508 U.S. 36, 37 (1993) (observing that "[USSG commentary] is authoritative unless it violates the Constitution or a federal statute").  To the extent that USSG § 1B1.10's Application Notes Commentary prohibits the Court from reducing defendant's sentence, it is incompatible with 18 U.S.C. § 3582(c)(2) as interpreted by the Supreme Court and is invalid, at least in the situation where the Court imposes a non-guidelines sentence and explicitly bases that sentence on a guidelines range that is subsequently amended.

### 2. A Reduction in Sentence Is Consistent with Precedent and the Policy of the Retroactive Crack Cocaine Amendments

Cases interpreting prior versions of the USSG and the policy behind the retroactive crack cocaine amendments support the Court's conclusion that 18 U.S.C. § 3582(c)(2) authorizes relief in this case.

In United States v. Flemming—decided before Freeman—the district court departed downward under USSG § 4A1.3 because the Career Offender guidelines substantially over-represented the seriousness of the defendant's criminal history. 617 F.3d 252, 258 (3d Cir. 2010). The district court "instead applied the Crack Cocaine Guidelines range." Id. The Third Circuit, citing precedent from the First, Second, and Fourth Circuits, concluded that the district court "'actually used' the Crack Cocaine Guidelines range, rather than the Career Offender Guidelines range, when it sentenced [the defendant]." Id. The Third Circuit held that the sentence was "based on" the Crack Cocaine range, not the Career Offender range:

> In applying the § 4A1.3 departure, the District Court did not specify the number of offense levels or criminal history categories by which it was departing. Rather, it simply reverted, without further comment, to the base offense level calculated under the Crack Cocaine Guidelines (24) and the criminal history category that applied to Flemming absent the career offender enhancement (V), and imposed a sentence within that range. Indeed, we have little doubt that had Amendment 706 been in effect when Flemming was sentenced—and, thus, had Flemming's offense level under the Crack Cocaine Guidelines been two levels lower—the District Court would have applied the resulting lower Guidelines range after departing under § 4A1.3. To ignore these facts and conclude nonetheless that Flemming was sentenced "based on" the Career Offender Guidelines range would put form over substance.

Id. at 259-60 (citations and footnote omitted).[14] The Second Circuit reached a similar conclusion, as did the First and Fourth Circuits. See Rivera, 662 F.3d at 181 (surveying cases and discussing the "'commonsense conclusion' that the 'guideline range applicable to the defendant' within the meaning of § 1B1.10 is the range that was actually used in sentencing the

---

[14] In a separate part of the opinion, the Flemming court also concluded that the defendant's "applicable guideline range" had been lowered within the meaning of the old edition of USSG § 1B1.10, based in large part on the Third Circuit's conclusion that the pre-2003 edition of USSG § 1B1.1 was ambiguous as to whether a § 4A1.3 departure was included in an "applicable guideline range" calculation. 617 F.3d at 260-72. Because USSG §§ 1B1.1 and 1B1.10 were amended after Flemming, and because this case involves a non-guideline sentence, the second part of Flemming is inapposite.

defendant"). But see, e.g., United States v. Pembrook, 609 F.3d 381 (6th Cir. 2010) (reaching opposite conclusion from Rivera and Flemming and noting that Eighth and Tenth Circuits had done the same).

Reducing defendant's sentence is also consistent with the policy behind the retroactive crack cocaine sentencing guideline amendments. "The [USSC] itself has reported that the crack/powder disparity [in effect before the amendments] produce[d] disproportionately harsh sanctions, i.e., sentences for crack cocaine offenses 'greater than necessary' in light of the purposes of sentencing set forth in [18 U.S.C.] § 3553(a)." Kimbrough v. United States, 552 U.S. 85, 110 (2007). Accordingly, in 2007 and 2010, the USSC promulgated amendments to remedy that disparity. See USSG App. C, Amend. 706 (Reason for Amendment) ("Current data and information continue to support the Commission's consistently held position that the 100-to-1 drug quantity ratio significantly undermines various congressional objectives set forth in the Sentencing Reform Act and elsewhere."); see also USSG App. C, Amend. 748. The USSC chose to make those crack cocaine guideline amendments retroactive—after extensive consideration and preparation of a comprehensive study—to carry out Congressional intent "to restore fairness to Federal cocaine sentencing" and "provide cocaine sentencing disparity reduction." USSG App. C, Amend. 759 (Reason for Amendment) (quoting USSG App. C, Amend. 706 (Reason for Amendment) and the Fair Sentencing Act, 124 Stat. at 2372). The Third Circuit summarized the policy arguments in favor of permitting a sentence reduction as follows:

> There is no dispute that Flemming was burdened by the very crack/powder cocaine disparity that the Sentencing Commission sought to remedy by promulgating Amendment 706 [the 2007 crack cocaine guideline amendment] and making it retroactive. As noted, had Amendment 706 been in force when Flemming was sentenced, we have little doubt the District Court would have set a

> sentence within that range. In these circumstances, we believe that rendering a defendant ineligible for a sentence reduction—simply because he technically qualified as a career offender, and despite a District Court's reasoned judgment that such a classification was inappropriate because it overstated the seriousness of his criminal history . . . —is antithetical to the policy concerns that motivated Amendment 706.

Flemming, 617 F.3d at 271.

Those policy arguments apply compellingly in this case. Defendant received a sentence whose explicit "basis or foundation" was a guideline sentencing range that has since been amended, see Freeman, 131 S.Ct. at 2695 (Sotomayor, J., concurring), and the Court "actually used" the now-amended guideline in imposing sentence, see Flemming, 617 F.3d at 258. This Court concluded at sentencing that defendant's Career Offender status overstated his criminal history and exercised its discretion under Booker to impose a sentence of double the midpoint of the range that would have been applicable absent the Career Offender guidelines. Had the amended guidelines been in effect at sentencing, the Court would have doubled the midpoint of the amended range and imposed a sentence of approximately 84 months' incarceration instead of 128 months' incarceration. Defendant should now receive the benefit of that lower sentence.

The Court thus concludes that the policy behind the retroactive amendments favors a sentence reduction in this case. See Freeman, 131 S.Ct. at 2690 (plurality op.) ("There is no reason to deny [18 U.S.C.] § 3582(c)(2) relief to defendants who linger in prison pursuant to sentences that would not have been imposed but for a since-rejected, excessive range.").

### C. A Sentence of 84 Months' Incarceration is Appropriate

As discussed supra, considering only the quantity of crack cocaine for which defendant was responsible, without considering the Career Offender rules, and based on a criminal history category of VI, defendant's base offense level under the amended guidelines would yield a

guideline range of thirty-seven to forty-six months' incarceration.  <u>See</u> USSG §§ 2D1.1(c)(14), 2D1.2(a) (2011 ed.).  Doubling the midpoint of that range, as the Court did at the original sentencing, results in a sentence of eighty-four months' incarceration.  Having concluded that defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered," 18 U.S.C. § 3582(c)(2), before reducing defendant's sentence, the Court must "consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in [18 U.S.C.] § 3553(a)."  <u>Dillon</u>, 130 S. Ct. at 2691.  Having considered those factors, and having considered "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment" pursuant to USSG § 1B1.10, comment. (n.1(B)), the Court concludes that a reduction in the term of imprisonment in this case from 128 months to 84 months is appropriate.

## V.   Conclusion

It is appropriate to reduce defendant's sentence from 128 months to 84 months of incarceration because the "basis" for defendant's sentence was a sentencing guideline that has been lowered through retroactive amendments.  Where the Court has imposed a sentence outside the advisory guidelines system but explicitly based its sentence on a guideline, the Application Notes Commentary to the USSG is invalid under 18 U.S.C. § 3582(c)(2) as interpreted by the United States Supreme Court because the commentary impermissibly restrains the Court's discretion to reduce the sentence of incarceration.  Defendant's Pro Se Motion for Modification of Sentence Pursuant to Title 18 U.S.C. Sections 3582(c)(2) & 3582(1)(B) and defendant's Supplemental Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2) are therefore granted.

An appropriate Order follows.